**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

| | | |
|---|---|---|
| **RICHARD JAY WRISTON, on behalf of** | ) | |
| **the ESTATE OF** | ) | |
| **RICHARD JASON WRISTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.** 5:24-cv-00097 _____ |
| | ) | |
| **WEST VIRGINIA DIVISION** | ) | |
| **OF CORRECTIONS AND** | ) | |
| **REHABILITATION,** | ) | |
| **BETSY JIVIDEN, individually as a** | ) | |
| **Former Employee of the West Virginia** | ) | |
| **Division of Corrections and** | ) | |
| **Rehabilitation;** | ) | |
| **JEFF SANDY, individually as the** | ) | |
| **former Cabinet Secretary of the West** | ) | |
| **Virginia;** | ) | |
| **Department of Homeland Security;** | ) | |
| **MICHAEL FRANCIS, individually as a** | ) | |
| **Former Employee of the West Virginia** | ) | |
| **Division of Corrections and** | ) | |
| **Rehabilitation;** | ) | |
| **DAKOTA HOOD, individually as an** | ) | |
| **employee of the West Virginia Division** | ) | |
| **of Corrections and Rehabilitation,** | ) | |
| **HANNAH BARE, individually as an** | ) | |
| **employee of the West Virginia Division** | ) | |
| **of Corrections and Rehabilitation,** | ) | |
| **JARED WILLIAMS, individually as an** | ) | |
| **employee of the West Virginia Division** | ) | |
| **of Corrections and Rehabilitation,** | ) | |
| **KERRINA ROSE, individually as an** | ) | |
| **employee of the West Virginia Division** | ) | |
| **of Corrections and Rehabilitation,** | ) | |
| **JUSTIN MULLINS, individually as an** | ) | |
| **employee of the West Virginia Division** | ) | |
| **of Corrections and Rehabilitation,** | ) | |
| **JONAH RADOSEVICH, individually** | ) | |
| **as an employee of the West Virginia** | ) | |
| **Division of Corrections and Rehabilitation)** | | |
| **PRIMECARE MEDICAL, INC.,** | ) | |

**AMBER DUNCAN, MA, individually as** )
**an employee of PrimeCare,** )
**JASMINE STAFFORD, MA,** )
**Individually as an employee** )
**of PrimeCare,** )
**MAKAYLA COPELAND, CNA,** )
**Individually as an employee of** )
**PrimeCare,** )
**MEGAN HOLLAND, LPN,** )
**Individually as an employee of** )
**PrimeCare,** )
**ASHLEY STROUP, LPN,** )
**Individually as an employee of** )
**PrimeCare,** )
**JOHN/JANE DOE PRIMECARE** )
**EMPLOYEES, and** )
**JOHN/JANE DOE CORRECTIONAL** )
**OFFICERS,** )
                                                              )
       **Defendants.** )
_____ )

## COMPLAINT

**COMES NOW**, Plaintiff Richard Jay Wriston, on behalf of the Estate of Richard Jason

Wriston, by the undersigned counsel, and for his Complaint states and alleges as follows based

upon personal knowledge and/or information and belief:

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and under

its authority to decide pendent state law claims pursuant to 28 U.S.C. § 1367.

2.      Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983, 1988 and West Virginia

state law.

3.      Venue is proper because some Defendants can be served with process within the

Southern District of West Virginia, Beckley Division, and because the incidents giving rise to this

Complaint occurred within the Southern District of West Virginia, Beckley Division.

## II.    PARTIES

4.      Plaintiff Richard Jay Wriston (hereinafter "Plaintiff") was at all times relevant hereto a resident of Raleigh County, West Virginia.

5.      Plaintiff is the administrator of the decedent, Richard Jason Wriston (hereinafter "Ricky Wriston").

6.      Plaintiff was duly appointed as the Administrator of the Estate of Richard Jason Wriston on March 22, 2023 by the Fiduciary Supervisor of Raleigh County, West Virginia.

7.      Defendant Jeff A. Sandy (hereinafter "Former Cabinet Secretary Sandy") was at all times relevant hereto an employee of the West Virginia Department of Homeland Security (hereinafter the "WVDOHS") and was at all times relevant hereto acting within the scope of his employment and under color of law as the Cabinet Secretary of the WVDOHS.

8.      As Former Cabinet Secretary of the WVDOHS, Former Cabinet Secretary Sandy is charged with providing support, oversight, and guidance to the West Virginia Division of Corrections and Rehabilitation (hereinafter "WVDOCR").

9.      Former Cabinet Secretary Sandy oversaw the sham "investigation" into the deplorable conditions at SRJ in the Spring of 2022.

10.     Former Cabinet Secretary Sandy is sued for damages in his individual capacity.

11.     Defendant Betsy Jividen (hereinafter "Former Commissioner Jividen") was an employee of the WVDOCR from January 8, 2018 until she was forced to resign on August 5, 2022, and was at all times relevant hereto acting within the scope of her employment and under color of law as the Commissioner of the WVDOCR.

12.     Defendant the West Virginia Division of Corrections and Rehabilitation (hereinafter, the "WVDCR") is a state agency under the authority and control of the West Virginia

Department of Homeland Security (hereinafter, the "WVDHS"). The WVDCR operates, manages, and controls all state correctional facilities in West Virginia, including Southern Regional Jail in Raliegh County, Beaver, West Virginia (hereinafter "SRJ").

13.     As Former Commissioner of the WVDOCR, Former Commissioner Jividen was vested with executive authority and responsibility for the administration, operation, and control of all WVDOCR facilities and employees of WVDOCR facilities. Commissioner Jividen's duties included establishing, monitoring, and enforcing policy directives and procedures that ensure constitutional confinement and treatment of all individuals in the custody of the WVDOCR. See W. Va. Code § 15A-3-4; W. Va. Code § 15A-3-12.

14.     Among other things, Former Commissioner Jividen was charged with ensuring that inmates housed in any West Virginia jail were not subjected to unnecessary, excessive, or unreasonable force and were provided reasonable and appropriate medical care.

15.     Likewise, Former Commissioner Jividen was tasked by law with ensuring that jail facilities in West Virginia, including SRJ, complied with W. Va. CSR § 95-1-10 et seq. and W. Va. CSR § 95-1-8 et seq.

16.     Former Commissioner Jividen, who upon information and belief resides in Ohio County, West Virginia, is sued for damages in her individual capacity.

17.     Defendant Michael Francis (hereinafter "Former Superintendent Francis") was at all times relevant hereto an employee of the WVDOCR and was at all times relevant hereto acting within the scope of his employment and under color of law as the administrator of SRJ.

18.     Former Superintendent Francis was tasked by law with the care and custody of all detainees and prisoners incarcerated at SRJ. Former Superintendent Francis was vested with authority and responsibility for the safe staffing, administration, operation, and control of SRJ,

including, but not limited to, the oversight of all SRJ employees, and the authority to promulgate, amend, and implement all policies and procedures within SRJ to ensure constitutional confinement and treatment of all individuals incarcerated therein. See W. Va. Code § 15A-3-5.

19.     Among other things, Former Superintendent Francis was charged with ensuring that inmates housed in SRJ were not subjected to unnecessary, excessive, or unreasonable force and were provided reasonable and appropriate medical care.

20.     Likewise, Former Superintendent Francis was tasked by law with ensuring that jail facilities in West Virginia, including SRJ, comply with W. Va. CSR § 95-1-10 et seq. and W. Va. CSR § 95-1-8 et seq.

21.     Former Superintendent Francis, who upon information and belief resides in Monroe County, West Virginia, is sued only in his individual capacity.

22.     According to W. Va. Code § 15A-3-1, the purpose of the WVDCR is to "establish a just, humane, and efficient corrections program" in West Virginia (emphasis added).

23.     Based upon information and belief, approximately eleven (11) SRJ inmates died between January 1, 2021 and the date of Ricky Wriston's death.

24.     According to the Bureau of Justice Statistics, in 2019, there were 1,200 deaths in local jails nationwide, an average of twenty-four (24) per state.[1]

25.     Defendant Dakota Hood, who was a sergeant (hereinafter "Sgt. Hood"), was at all times relevant hereto an employee of the WVDCR and was at all times relevant hereto acting within the scope of his employment and under color of law as a correctional officer at SRJ.

---

[1] bjs.ojp.gov/library/publications/mortality-local-jails-2000-2019-statistical-tables (accessed December 19, 2023).

26.     Sgt. Hood, who upon information and belief resides in Pineville, Wyoming County, West Virginia, is sued only in his individual capacity.

27.     Defendant Jared Williams, who was a sergeant (hereinafter "Sgt. Williams"), was at all times relevant hereto an employee of the WVDCR and was at all times relevant hereto acting within the scope of his employment and under color of law as a correctional officer at SRJ.

28.     Sgt. Williams, who upon information and belief resides in Raleigh County, West Virginia, is sued only in his individual capacity.

29.     Defendant Hannah Bare, who was a corporal (hereinafter "Cpl. Bare"), was at all times relevant hereto an employee of the WVDCR and was at all times relevant hereto acting within the scope of her employment and under color of law as a correctional officer at SRJ.

30.     Cpl. Bare, who upon information and belief resides in Raleigh County, West Virginia, is sued only in her individual capacity.

31.     Defendant Kerrina Rose, who was a corporal  (hereinafter "Cpl. Rose"), was at all times relevant hereto an employee of the WVDCR and was at all times relevant hereto acting within the scope of her employment and under color of law as a correctional officer at SRJ.

32.     Cpl. Rose, who upon information and belief resides in Wyoming County, West Virginia, is sued only in her individual capacity.

33.     Defendant Justin Mullins, who was a correctional officer (hereinafter "CO. Mullins"), was at all times relevant hereto an employee of the WVDCR and was at all times relevant hereto acting within the scope of his employment and under color of law as a correctional officer at SRJ.

34.     CO Mullins, who upon information and belief resides in Roanoke, Virginia, is sued only in his individual capacity.

35.     Defendant Jonah Radosevich, who was a correctional officer (hereinafter "CO Radosevich"), was at all times relevant hereto an employee of the WVDCR and was at all times relevant hereto acting within the scope of his employment and under color of law as a correctional officer at SRJ.

36.     CO Radosevich, who upon information and belief resides in Wyoming County, West Virginia, is sued only in his individual capacity.

37.     Defendant PrimeCare Medical, Inc. is a Pennsylvania corporation with a principal place of business located at 3940 Locust Lane, Harrisburg, Pennsylvania, 17109.

38.     PrimeCare Medical, Inc. will be referred to herein as "PrimeCare."

39.     Defendant PrimeCare Medical, Inc. (hereinafter "PrimeCare") is a Pennsylvania corporation with a principal place of business located at 3940 Locust Lane, Harrisburg, Pennsylvania, 17109.  PrimeCare Medical, Inc. is the parent company of PrimeCare Medical of West Virginia, Inc.

40.     PrimeCare Medical of West Virginia, Inc. was responsible for providing medical care to inmates in Southern Regional Jail (hereinafter "SRJ") including Ricky Wriston. PrimeCare Medical of West Virginia, Inc. has filed for bankruptcy protection. Plaintiff intends to amend this complaint to name PrimeCare Medical of West Virginia, Inc. as a defendant when the automatic stay is lifted.

41.     Additionally, PrimeCare Medical of West Virginia, Inc. was at all relevant times an alter ego of PrimeCare Medical, Inc..  Upon information and belief:

a.     PrimeCare Medical Inc. comingled funds and other assets with PrimeCare Medical of West Virginia, Inc. including, for example, by purchasing insurance policies and paying insurance premiums on behalf of PrimeCare Medical of West Virginia, Inc.;

b.  PrimeCare Medical Inc. is the sole owner of PrimeCare Medical of West Virginia, Inc.;

c.  PrimeCare Medical of West Virginia, Inc. failed to maintain minutes, records, and other corporate formalities;

d.  PrimeCare Medical Inc. and PrimeCare Medical of West Virginia, Inc. are owned and managed by the same parties;

e.  PrimeCare Medical Inc. failed to adequately capitalize PrimeCare Medical of West Virginia, Inc. for the reasonable risks of its undertakings;

f.  PrimeCare Medical Inc. used PrimeCare Medical of West Virginia, Inc. as a mere shell or conduit to operate some particular aspect of its business;

g.  PrimeCare Medical of West Virginia, Inc. used the same offices, letterhead, policies and protocols, employees, attorneys, human resources department, and other resources as PrimeCare Medical Inc.;

h.  PrimeCare Medical Inc. actively managed the day-to-day operations of PrimeCare Medical of West Virginia, Inc. including, for example, by created routine employee schedules for employees of PrimeCare Medical of West Virginia, Inc.;

i.  PrimeCare Medical of West Virginia, Inc. does not maintain its own website or other marketing operations and is otherwise represented to be the same enterprise as PrimeCare Medical, Inc.;

j.  PrimeCare Medical Inc. and PrimeCare Medical of West Virginia, Inc. concealed the identity of PrimeCare Medical of West Virginia, Inc.'s ownership, management, and financial interests;

k.  PrimeCare Medical Inc. disregarded legal formalities and failed to maintain a proper arm's length relationship with PrimeCare Medical of West Virginia, Inc.;

l.  PrimeCare Medical Inc. manipulated assists and liabilities to concentrate assets in itself and liabilities in PrimeCare Medical of West Virginia, Inc.; and

m.  PrimeCare Medical Inc. used PrimeCare Medical of West Virginia, Inc. to enter into a contract with the State of West Virginia in which agreed, among other things, to provide medical and health services to inmates in SRJ that complied with state law, federal law, and met the National Commission on Correctional Health Care's standards knowing that PrimeCare Medical of West Virginia, Inc. could not meet those standards; and

n.  PrimeCare Medical Inc., therefore, used PrimeCare Medical of West Virginia, Inc. to contract with the State of West Virginia to avoid the risk of nonperformance of that contract.

42.  PrimeCare Medical of West Virginia, Inc. entered into a contract with the State of West Virginia in which agreed, among other things, to purchase and maintain liability insurance policies applicable to its operations in SRJ.  As noted above, however, PrimeCare Medical Inc. purchased insurance on behalf of PrimeCare Medical of West Virginia, Inc.

43.  Defendant Amber Duncan, MA (hereinafter "MA Duncan") was at all times relevant hereto an employee of PrimeCare and was at all times relevant hereto acting within the scope of her employment as a medical assistant at SRJ.

44.  MA Duncan, who upon information and belief resides in Fayette County, West Virginia, is sued only in her individual capacity.

45.     Defendant Jasmine Stafford, MA (hereinafter "MA Stafford") was at all times relevant hereto an employee of PrimeCare and was at all times relevant hereto acting within the scope of her employment as a nurse at SRJ.

46.     MA Stafford, who upon information and belief resides in Wyoming County, West Virginia, is sued only in her individual capacity.

47.     Defendant MaKayla Copeland, CNA (hereinafter "CNA Copeland") was at all times relevant hereto an employee of PrimeCare and was at all times relevant hereto acting within the scope of her employment as a nurse at SRJ.

48.     CNA Copeland, who upon information and belief resides in Fayette County, West Virginia, is sued only in her individual capacity.

49.     Defendant Megan Holland, LPN (hereinafter "LPN Holland") was at all times relevant hereto an employee of PrimeCare and was at all times relevant hereto acting within the scope of her employment as a nurse at SRJ.

50.     LPN Holland , who upon information and belief resides in Mercer County, West Virginia, is sued only in her individual capacity.

51.     Defendant Ashley Stroup, LPN (hereinafter "LPN Stroup") was at all times relevant hereto an employee of PrimeCare and was at all times relevant hereto acting within the scope of her employment as a nurse at SRJ.

52.     LPN Stroup, who upon information and belief resides in Raleigh County, West Virginia, is sued only in her individual capacity.

53.     Defendants John/Jane Doe PrimeCare Employees are yet to be identified current and/or former employees of PrimeCare who worked, or are still working, at SRJ.

54.     Defendants John/Jane Doe Correctional Officers are yet to be identified current and/or former correctional officers employed by the WVDCR who worked, or are still working, at SRJ.

55.     All Defendants, with the exception of PrimeCare, are sued up to the limits of the insurance policy(s) that provides liability coverage for their actions and omissions, or as otherwise permitted by law.

### III.     INTRODUCTION

56.     Upon admission to SRJ death, Ricky Wriston was permitted to harm himself as Defendants watched as he repeatedly struck his head on the floor and "flailed" around his cell.

57.     Ricky Wriston, while under the observation of Defendant PrimeCare Employees and Defendant Correctional Officer Employees, exhibited medical symptoms that were obvious signs that Ricky Wriston needed to be transported to a hospital for medical care.

58.     Despite these observations of self-harm and exhibition of serious medical symptoms requiring immediate intervention by Defendant PrimeCare Employees and Defendant Correctional Officer Employees, Ricky Wriston was not transported to a hospital until the Defendants determined he had no pulse.

59.     Ricky Wriston died on March 14, 2022 after transport to Beckley Appalachian Regional Hospital ("BARH").

60.     At the time of his incarceration at SRJ, Ricky Wriston was a pretrial detainee, who was charged with non-violent offenses of obstructing, disorderly conduct, public intoxication, and indecent exposure.

61.     The callous and indifferent treatment Ricky Wriston received from both correctional officers and medical staff at SRJ was ultimately a death sentence, like many at Southern Regional Jail the past decade.

62.     Sadly, Ricky Wriston's fate is not unique.  Just simply being incarcerated in a West Virginia jail – especially SRJ – has been a death sentence to far too many.[2]

## IV.     STATEMENT OF FACTS

63.     Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

64.     At all times relevant hereto, Ricky Wriston was incarcerated at SRJ and in the custody of the WVDCR.

65.     At all times relevant hereto, PrimeCare, through its agents and employees, provided medical care to inmates incarcerated at SRJ, including Ricky Wriston.

66.     PrimeCare bid for the contract with West Virginia Department of Corrections and Rehabilitation, and in its Request for Proposal, stated that Southern Regional Jail would be staffed with one health services administrator (RN); one director of nursing (RN); three LPNs on dayshift; one MA on dayshift; one RN on evening shift; two LPNs on evening shift; one MA on evening shift; two LPNs on night shift; one MA on night shift; a medical provider for thirty hours per week; and licensed mental health providers for forty hours per week. PrimeCare failed to staff the adequate amount of providers identified in their proposal in 2022. Further, PrimeCare was short staffed during Plaintiff's incarceration.

---

[2] https://www.wvgazettemail.com/news/legislative_session/group-calls-for-federal-investigation-into-deaths-at-wv-regional-jails/article_fba818ce-f316-5e7e-b99f-1d1f9dd0058a.html; https://www.register-herald.com/news/srj-deaths-gain-national-attention-calls-for-independent-federal-investigation/article_d6a16b1e-b491-11ed-b125-93aa5f2a0d47.html

67.     PrimeCare contracted to provide WVDCR comprehensive healthcare services to all offenders that meet or exceed the standards of ACA, NCCHC, and the provisions of the proposal. Comprehensive services include but are not limited to, medical, mental health, dental, optometry, auditory, pharmaceutical, and diagnostic services.

68.     PrimeCare's Request for Proposal specifically states, "Health Care professionals shall refer offenders exhibiting signs of acute mental illness during the health screening process, psychological distress, or danger of harm to self or others to a qualified mental health professional staff for further evaluation."

69.     Despite its contract to provide appropriate medical and mental health care to all inmates, PrimeCare failed Mr. Wriston on March 13-14, 2022.

70.     On Sunday, March 13, 2022 at approximately 4:10 a.m., Ricky Wriston became incarcerated at SRJ as a pre-trial detainee.

71.     Ricky Wriston was brought in by the Beckley Police Department and was placed in Holding Cell 1 (One) for observation.

72.     The booking process was not completed as Ricky Wriston was unable to remain standing for a body scan.

73.     At approximately 4:10 a.m., Ricky Wriston was taken to the booking bathroom to be searched physically since he was unable to stand to go through the body scanner.

74.     Based upon information and belief, Ricky Wriston was required to undergo a medical screening process to determine if he should be admitted to SRJ or required immediate treatment at an appropriate health care facility.

75.     At approximately 4:14 a.m., medical assistant Amber Duncan, who possessed zero formal medical training, attempted to take Ricky Wriston's vitals. The audio and video and

- 13 -

subsequent CID report show that medical assistant Amber Duncan indicated that she was unsure whether or not to accept Mr. Wriston into the facility. Despite this, no one within PrimeCare, not an MD, NP, PA, RN or LPN was called to evaluate Mr. Wriston.

76.    Based upon information and belief, Ricky Wriston should not have been admitted to SRJ and should have been transported to a hospital for immediate medical care.

77.    Based upon information and belief, Ricky Wriston was never medically cleared to be accepted into SRJ by PrimeCare medical personnel, including MA Ducan due to his not being able to be scanned or have his vital signs properly taken. Moreover, a medical assistant is not adequately qualified to be performing the types of screening PrimeCare was doing on the date in question.

78.    At approximately 4:43 a.m., correctional staff began noticing that Ricky Wriston was "flailing around" in his cell, moving erratically, and hitting his head off of the wall.

79.    At this time, CO Radosevich informed Sgt. Jared Williams that Mr. Wriston was "bashing his face off stuff."

80.    At approximately 4:46 a.m., Lt. Carter told officers observing Mr. Wriston, "Let me know if I need to come back and put him in the chair."

81.    Ricky Wriston's blood pressure was 140/78; heart rate 88 bpm; and respirations were 18. He was awake and alert but anxious.

82.    MA Duncan observed Ricky Wriston to be rolling around and hitting his head on the floor.

83.    Ricky Wriston was permitted by Defendants to "flail about his cell" for an hour, potentially causing harm to himself.

84.    Ricky Wriston was also observed "'flopping'" about on the floor.

- 14 -

85.     At approximately 4:57 a.m., CO Radosevich is heard to say that if Wriston bashed his head hard enough that he would break it open and he "did not want hospital duty." Additionally, CO Radosevich and Sgt Williams discuss Mr. Wriston hitting his head hard. Despite these concerns, no officer or medical staff treated Mr. Wriston or called for help.

86.     Sgt. Williams is heard to say to Mr. Wriston, "glad to see ya tripping," "Do I got to give you a damn helmet?," "can you sit still for five f***ing minutes?," "You're flailing around like crazy," and "give you a damn padded room" between 5:10 and 5:12 a.m.

87.     At 5:13 a.m., Sgt. Williams is heard to say, "This guy can't sit still to save his life. He's okay for now. CO Radosevich said he cracked his head hard. I didn't see him do it."

88.     At 5:37 a.m., CO Radosevich states that Mr. Wriston "knocked his f***ing head off again." Radosevich then states, "He's going to smack it one good time and it will bust open." Again, despite these concerns, Defendants continue to observe Mr. Wriston without calling for medical attention.

89.     At 5:44 a.m., Sgt. Williams notes that he "thought about" giving Mr. Wriston a helmet. What was needed was a call made for medical attention.

90.     Mr. Wriston was placed in a restraint chair at approximately 5:48 a.m.

91.     His restraint chair assessment at approximately 6:32 a.m. revealed that he was agitated. His blood pressure was 180/90; heart rate was 94 bpm; respirations of 20 and he was awake and alert.

92.     At approximately 7:13 a.m., Ricky Wriston's blood pressure was 184/90; heart rate was 91 bpm; and, respirations were 18. He was agitated.

93.     At approximately 7:57 a.m. MA Stafford, MA and CNA Copeland, when checking on Ricky Wriston's vital signs, when they were informed by Sgt. Hood and CO Rose that Ricky Wriston would not sit still, and he was trying to "break out of the chair."

94.     Allegedly, MA Stafford tried to place a pulse oximeter on his finger, but Ricky Wriston threw it off.

95.     MA Stafford was unable to get an accurate reading of his blood pressure.

96.     At approximately 9:20 a.m., Ricky Wriston's blood pressure was 136/78; heart rate was 67 bpm; and, respirations were 18.

97.     At approximately 10:00 a.m., Ricky Wriston was released from the restraint chair due to him causing abrasions to his wrists and ankles, because he had continued to flail his body.

98.     Defendants did not treat Mr. Wriston upon being released from the chair, nor did they seek medical attention for Mr. Wriston's abrasions to his wrists and ankles.

99.     After being released from the restraint chair, Ricky Wriston remained in Holding Cell 1 for observation.

100.    Between 10:00 a.m. and 7:25 p.m., Ricky Wriston was permitted to continue to erractically move around his cell, flail into walls, hitting his head, and falling down.

101.    At approximately 5:11 p.m., Ricky Wriston was observed rolling back and forth on the floor.

102.    At approximately 6:53 p.m., Sgt. Hood, Cpl. Bare and Sgt. Williams entered Holding Cell 1 to check on Ricky Wriston.

103.    CO Rose states, "I told him to get his ass over there and go lay down." Sgt. Hood observed Mr. Wriston's wrists.

104.    CO Kerrina Rose notes that you could "smell the blood" in the holding cell. Both officers note that "there is blood everywhere in the cell."

105.    At approximately 7:03 p.m., MA Duncan entered to check Ricky Wriston's vital signs; however, Ricky Wriston could not sit still during this attempt.

106.    Due to Ricky Wriston's erratic movements, MA Duncan was unable to obtain accurate vital signs.

107.    At approximately 7:13 p.m., Sgt. Williams notes that Mr. Wriston was dehydrated by observing his mouth, and states that Mr. Wriston had not ate or drank since coming into the facility.

108.    A determination was then made that the on-call doctor needed to be called.

109.    All Defendants left Holding Cell 1, and, based upon information and belief, no one remained to observe Ricky Wriston.

110.     Subsequently, MA Duncan walked to the medical department to inform LPN Holland and LPN Stroup that Ricky Wriston needed to be sent to the emergency room for further evaluation.

111.    LPN Holland, LPN Stroup, and MA Duncan then entered the booking department.

112.    At approximately, 7:25 p.m., Cpl. Rose opened Holding Cell 1 and Ricky Wriston was observed to be in the supine position.

113.    MA Duncan then checked for a pulse, which was absent, and CPR was started.

114.    LPN Stroup applied the automated external defibrillator ("AED") and advised Cpl. Rose to call a medical response and 911.

115.    Cpl. Mullins took over and performed chest compressions.

116.    "Medical Assistance in Booking" was transmitted via facility radio by Cpl. Rose at approximately 7:27 p.m.

117.    Corporal Randall Boyd (Central Control Officer) called for an ambulance at approximately 7:28 p.m. hours.

118.    Narcan was administered twice and CPR was continued until Jan-Care ambulance arrived at approximately 7:45 p.m.

119.    At approximately 7:47 p.m., Jan-Care personnel noted that Ricky Wriston was unresponsive; his capillary refill was greater than three seconds; his extremities were cold; and, he was not breathing.

120.    Evaluation at approximately 7:52 p.m. demonstrated that his pupils were dilated and non-reactive.

121.    At that time, he had a weak regular pulse and his blood pressure was 120/87.

122.    Jan-Care personnel noted bruising on the knees, bilaterally; hip bones, bilaterally; hands and his arm to his elbow, bilaterally; head; and, abdomen in the left rib cage area.

123.    At approximately 10:07 p.m., Ricky Wriston had no heartbeat and his blood pressure was zero.

124.    Ricky Wriston was transported to Beckley Appalachian Regional Hospital (hereinafter "BARH") and CPR was continued during transport.

125.    The correctional officer who was sent to accompany Ricky Wriston to BARH had minimal knowledge of Ricky Wriston's history at SRJ and could not assist the health care providers in providing information so that Ricky Wriston could be provided informed medical care.

126.     When Ricky Wriston arrived at BARH, he was not breathing on his own and was asystole on the monitor.

127.     On March 14, 2022, at approximately 12:54 a.m., BARH personnel reported that Ricky Wriston was admitted to the intensive care unit.

128.     The initial assessment at BARH was coagulopathy; rhabdomyolysys (death of muscle fibers); hyperkalemia; acute renal failure; cardiac arrest; abrasion, multiple sites; and, acute physical restrains status.

129.     His potassium level was elevated and the plan was to begin dialysis.

130.     Ricky Wriston was also noted to be suffering from dehydration and metabolic acidosis.

131.     Ricky Wriston was also had a very low heart rate (bradycardia) and his gag reflex was absent.

132.     Upon or after admission to the ICU, Ricky Wriston became hypotensive and medical personnel were unable to revive him.

133.     Tragically, Ricky Wriston died at approximately 1:07 a.m. on March 14, 2022.

134.     The BARH records indicated that the cause of death was drug overdose.

135.     The BARH records listed the following contributing factors to the death: cardiac arrest; sepsis; coagulopathy; rhabdomyolysys (death of muscle fibers); hyperkalemia; acute renal failure; abrasion, multiple sites; physical restraints status; and, drug overdose.

136.     An autopsy was performed and the immediate cause of death was stated to be hypoxic ischemic encephalopathy.

137.     Blunt force injuries to the head was also listed as contributing to the cause of death.

138.     Underlying causes of death also included cardiac arrest, methamphetamine, buprenorphine, venlafaxine, and 4-NAPP (a fentanyl precursor).

139.     Neuropathological evaluation of the brain revealed acute diffuse subarachnoid hemorrhage in the right frontal, right temporal, and right occipital lobes. Acute hypoxic-ischemic changes were also noted.

140.     With respect to WVDCR's internal investigation, Investigator Amanda Pritt found that "correctional staff, including the on-duty shift commander, did not take timely action to prevent and/or limit Inmate Wriston from causing self-inflicted injuries" and "correctional staff, including the on-duty shift commander, were overheard on video using obscene language and making inappropriate/unprofessional comments to or about Inmate Wriston."

141.     Upon information and belief, PrimeCare Defendants also engaged in inappropriate and unprofessional comments made to and about Mr. Wriston prior to his death.

142.     Defendants were well aware of Mr. Wriston's condition as they observed him for hours, without sending Mr. Wriston out for immediate medical attention. Mr. Wriston died as a result.

## V.    CAUSES OF ACTION

### COUNT I – EIGTH AND FOURTEENTH AMENDMENT VIOLATIONS UNDER 42 U.S.C. § 1983
*Former Cabinet Secretary Sandy, Former Commissioner Jividen, Former SRJ Superintendent Francis, Correctional Officer Defendants, PrimeCare Employee Defendants, John/Jane Doe Correctional Officers, and John/Jane Doe PrimeCare Employees*

143.     Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

144.    Defendants, while acting under color of law and within the scope of their employment, violated Ricky Wriston's Fourteenth Amendment right of due process to be free of punishment.

145.    Defendants, while acting under color of law and within the scope of their employment, violated Ricky Wriston's Eighth Amendment right to be free from cruel and unusual punishment.

146.    Defendant Correctional Officers and Defendant PrimeCare Employees permitted Ricky Wriston to harm himself and failed to provide or obtain necessary medical treatment for his medical condition, including, but not limited to transferring him to a hospital, providing the necessary monitoring of his mental and physical status, abandoning him after it was determined that a physician needed to be contacted, and failing to promptly call for emergency services for transport. The actions and inactions were not reasonably related to any legitimate non-punitive governmental or penological objective.

147.    Defendants were deliberately indifferent to the health, safety, and other basic needs of Ricky Wriston, as described herein, by having actual knowledge of such actions or inactions and deliberately taking no action to remedy them in a timely or appropriate manner.

148.    Defendants were deliberately indifferent to, and willfully ignored, the serious medical needs of Mr. Wriston as described above.

149.    Defendant supervisors likewise exhibited supervisory indifference or tacit authorization of the misconduct of subordinates and the constitutional injuries committed by said subordinates.

150.    Defendant supervisors had actual or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury and

the Defendant supervisors' response to said knowledge was so inadequate as to show deliberate indifference or tacit authorization of these constitutional injuries.

151.     But for Defendant supervisors' inadequate response to the pervasive and unreasonable risk of constitutional injury, Ricky Wriston would not have suffered the injuries alleged herein.

152.     PrimeCare, through their employees, deprived Ricky Wriston of his Fourteenth Amendment rights by and through its official policies, practices, or customs, *inter alia*, PrimeCare policies and procedures, PrimeCare Acceptance of Terms & Conditions, and the National Commission on Correctional Healthcare's Jail and Prison Standards.

153.     PrimeCare, through its employees, deprived Ricky Wriston of his Fourteenth Amendment rights by and through its *de facto* policies, practices, or customs, including, but not limited to, PrimeCare employees' failure to promptly obtain outside medical treatment when medically indicated by a patient's condition.

154.     The actions of Defendants, described herein, were not taken in good-faith, were objectively unreasonable, were in violation of clearly established law, and resulted in Ricky Wriston's death.

155.     During the time period at issue, it was clearly established that deliberate indifference to serious medical needs, as described herein, violated the Fourteenth Amendment to the United States Constitution.

156.     During the time period at issue, it was clearly established that deliberate indifference to the safety of pretrial detainees, as described herein, violated the Fourteenth Amendment to the United States Constitution.

157.    During the time period at issue, it was clearly established that deliberate indifference to the safety of pretrial detainees, as described herein, violated the Eighth Amendment to the United States Constitution.

158.    During the time period at issue, it was clearly established that deliberate indifference to serious medical needs, as described herein, violated the Eighth Amendment to the United States Constitution.

159.    The actions of Defendants, described herein, deliberately injured Plaintiffs in a way unjustified by any governmental interest.

160.    Defendants knew of the substantial risk to Ricky Wriston's health and/or safety and consciously disregard that risk.

161.    The actions of Defendants, described herein, shock the conscious.

162.    The actions of Defendants, described herein, were unlawful and unjustified.

163.    As a direct and proximate result of Defendants' unreasonable, unjustified, and unconstitutional actions, Ricky Wriston suffered violations of his constitutional rights, severe bodily injury, conscious pain and suffering, and an untimely death.  Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia survival and wrongful death statutes, W. Va. Code §§ 55-7-5 and 55-7-6.

164.    In addition to these compensatory damages, Plaintiff will also seek to recover, under 42 U.S.C. § 1983, attorneys' fees and cost incurred during the course of this litigation.

165.    The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Ricky Wriston, thereby justifying an award of punitive damages.

**COUNT II –EIGHTH AND FOURTEENTH AMENDMENT VIOLATIONS UNDER 42**
**U.S.C. § 1983**
**(Punishment Without Due Process)**
*Former Cabinet Secretary Sandy, Former Commissioner Jividen, Former SRJ Superintendent*
*Francis, Correctional Officer Defendants, PrimeCare Employee Defendants, John/Jane Doe*
*Correctional Officers, and John/Jane Doe PrimeCare Employees*

166.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

167.    Defendants, while acting under color of law and within the scope of their employment, violated the Fourteenth Amendment right of Mr. Wriston to be free of punishment without due process.

168.    Defendants, while acting under color of law and within the scope of their employment, violated the Eighth Amendment right of Mr. Wriston to be free from cruel and unusual punishment.

169.    The actions of Defendants, described hereinabove, violated the constitutional rights guaranteed to Mr. Wriston under the Fourteenth Amendment to the United States Constitution by subjecting him to deprivation of rights, including denial of medical care, without due process.

170.    Defendant supervisors likewise exhibited supervisory indifference or tacit authorization of the misconduct of subordinates and the constitutional injuries committed by said subordinates.

171.    Defendant supervisors had actual or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury and the Defendant supervisors' response to said knowledge was so inadequate as to show deliberate indifference or tacit authorizations of these constitutional injuries.

- 24 -

172.    The actions of Defendants, described hereinabove, were not taken in good faith, were objectively unreasonable, and were in violation of clearly established law.

173.    During the time period at issue, it was clearly established that the deliberate indifference to serious medical needs as described hereinabove, violated the United States Constitution.

174.    The actions of Defendants, described hereinabove, deliberately injured Mr. Wriston in a way unjustified by any governmental interest.

175.    The actions of Defendants, described hereinabove, shock the conscious.

176.    The actions of Defendants, described hereinabove, were unlawful and unjustified.

177.    As a direct and proximate result of Defendants' unlawful, unjustified, and unconstitutional actions, Mr. Wriston suffered a deprivation of his constitutional rights and physical harm, physical pain and discomfort, and death.

178.    In addition to these compensatory damages, Plaintiff will also seek to recover, under 42 U.S.C. § 1983, attorneys' fees and cost incurred during the course of this litigation.

179.    The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Mr. Wriston, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## COUNT III – CONSPIRACY TO COMMITT FOURTEENTH AMENDMENT VIOLATIONS UNDER 42 U.S.C. § 1983
*Former Cabinet Secretary Sandy, Former Commissioner Jividen, Former SRJ Superintendent Francis, Correctional Officer Defendants, PrimeCare Employee Defendants, John/Jane Doe Correctional Officers, and John/Jane Doe PrimeCare Employees*

180.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

- 25 -

181.    Defendants, while acting under color of law and within the scope of their employment, acted jointly and in concert to deprive Ricky Wriston of his Fourteenth Amendment right to receive basic medical care.

182.    Defendants committed overt acts to accomplish the constitutional violations and injuries described herein, including, but not limited to failing to observe Ricky Wriston, failing to prevent him from injuring himself, and failing to provide or obtain the necessary medical care to prevent serious injury and his death.

183.    Defendants implicitly agreed that they would not properly observe Ricky Wriston, would allow Ricky Wriston to harm himself, and would fail to obtain the proper medical treatment to prevent serious physical injury and his death.

184.    This agreement was evidenced by the lengthy period of time Ricky Wriston was permitted to harm himself; the lengthy amount of time that Ricky Wriston was not observed; and, the lengthy amount of time Ricky Wriston went without the necessary medical treatment to prevent serious physical injury and his death.

185.    The actions of Defendants, described herein, violated the constitutional rights guaranteed to Ricky Wriston under the Fourteenth Amendment to the United States Constitution.

186.    The actions of Defendants, described hereinabove, were not taken in good faith, were objectively unreasonable, and were in violation of clearly established law.

187.    As a direct and proximate result of Defendants' conspiracy to commit unreasonable, unjustified, and unconstitutional actions, Ricky Wriston suffered violations of his constitutional rights, severe bodily injury, conscious pain and suffering, and an untimely death. Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all

damages recoverable under the West Virginia survival and wrongful death statutes, W. Va. Code §§ 55-7-5 and 55-7-6.

188.    In addition to these compensatory damages, Plaintiff will also seek to recover, under 42 U.S.C. § 1983, attorneys' fees and cost incurred during the course of this litigation.

189.    The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Ricky Wriston, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## COUNT III – FAILURE TO INTERVENE/BYSTANDER LIABILITY UNDER 42 U.S.C. §1983
### *Correctional Officer Defendants, PrimeCare Employee Defendants, John/Jane Doe Correctional Officers, and John/Jane Doe PrimeCare Employees*

190.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

191.    Defendants, while acting under color of law and within the scope of their employment, violated Ricky Wriston's constitutional rights by failing to intervene while the above-referenced constitutional violations occurred.

192.    Defendants were aware that Ricky Wriston's constitutional rights were being violated, as set forth herein, yet purposefully failed and/or refused to take reasonable steps to protect him.

193.    Defendants had opportunities to intervene and protect Ricky Wriston, but chose not to.

194.    The actions of Defendants, described herein, violated the Constitutional rights guaranteed to Ricky Wriston under the Eighth Amendment to the United States Constitution.

195.    The actions of Defendants, described herein, were not taken in good-faith, were objectively unreasonable, and were in violation of clearly established law.

196.    The actions of Defendants, described herein, shock the conscious.

197.    The actions of Defendants, described herein, were unlawful and unjustified.

198.    As a direct and proximate result of Defendants' unreasonable, unjustified, and unconstitutional actions, Ricky Wriston suffered violations of his constitutional rights, severe bodily injury, conscious pain and suffering, and an untimely death.  Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia survival and wrongful death statutes, W. Va. Code §§ 55-7-5 and 55-7-6.

199.    In addition to these compensatory damages, Plaintiff will also seek to recover, under 42 U.S.C. § 1983, attorneys' fees and cost incurred during the course of this litigation.

200.    The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Ricky Wriston, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

### <u>COUNT IV – NEGLIGENCE</u>
***Former Cabinet Secretary Sandy, Former Commissioner Jividen, Former SRJ Superintendent Francis, Correctional Officer Defendants and John/Jane Doe Correctional Officers***

201.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

202.    At all times relevant hereto, Defendants owed Ricky Wriston a duty of care.

203.    As set forth herein, Defendants, while acting within the scope of their employment, breached their duties of care to Ricky Wriston.

204.    As a direct and proximate result of Defendants' grossly negligent, reckless, and unreasonable conduct, Ricky Wriston suffered severe bodily injury, conscious pain and suffering, and an untimely death.  Plaintiff will seek to recover all damages permitted under the law,

including but not limited to, all damages recoverable under the West Virginia survival and wrongful death statutes, W. Va. Code §§ 55-7-5 and 55-7-6.

205.    The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Ricky Wriston, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

### COUNT V – MEDICAL NEGLIGENCE
*PrimeCare, PrimeCare Employee Defendants, and John/Jane*
*Doe PrimeCare Employees*

206.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

207.    PrimeCare, through its agents and employees, owed Ricky Wriston a duty to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider acting in the same or similar circumstances.

208.    PrimeCare, through its agents and employees acting within the scope of their employment, were grossly negligent, careless, and reckless, and deviated from the standard of care in connection with its treatment of Ricky Wriston by the actions and inactions described herein, including but not limited to:

      i.    Failing to properly evaluate, diagnose, treat, and medically manage Ricky Wriston at SRJ;

      ii.   Failing to assess the cause of Ricky Wriston's persistent agitation and self-harm;

     iii.  Failing to bring Ricky Wriston to the medical unit for evaluation and care;

     iv.  Failing to have Ricky Wriston seen by a physician; and,

     v.   Failing to take Ricky Wriston to an outside hospital for medical care.

209.    PrimeCare, through its agents and employees, knew or should have known that deviating from the appropriate standard of care, as described herein, could result in serious injury or death to their patients, including Ricky Wriston.

- 29 -

210.     Defendants' failure to follow the accepted standard of care deprived Ricky Wriston of a chance of recovery and excessively increased his risk of harm, which was a substantial factor in bringing about his pain, suffering, and untimely death.

211.     As a direct and proximate result of Defendants' grossly negligent, careless and reckless conduct, Ricky Wriston suffered severe bodily injury, conscious pain and suffering, and an untimely death.  Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia survival and wrongful death statutes, W. Va. Code §§ 55-7-5 and 55-7-6.

212.     The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Ricky Wriston, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

213.     PrimeCare is vicariously liable for the actions and omissions of its employees committed within the scope of their employment.

## COUNT VI – GROSS NEGLIGENCE
*Former Cabinet Secretary Sandy, Former Commissioner Jividen, Former SRJ Superintendent Francis, Correctional Officer Defendants, PrimeCare, PrimeCare Employee Defendants, John/Jane Doe Correctional Officers, and John/Jane Doe Primecare Employees*

214.     Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

215.     At all times relevant hereto, Defendants owed Ricky Wriston a duty of care.

216.     PrimeCare, through its agents and employees, owed Ricky Wriston a duty to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider acting in the same or similar circumstances.

217.     As set forth herein, Defendants, while acting within the scope of their employment, breached their duties of care to Ricky Wriston.

218. In breaching their duties of care, Defendants displayed a conscious indifference to probable harmful consequences of their actions.

219. In breaching their duties of care, Defendants displayed a reckless disregard for the welfare of Ricky Wriston.

220. As a direct and proximate result of Defendants' grossly negligent, reckless, and unreasonable conduct, Ricky Wriston suffered severe bodily injury, conscious pain and suffering, and an untimely death. Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia survival and wrongful death statutes, W. Va. Code §§ 55-7-5 and 55-7-6.

221. The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Ricky Wriston, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

222. PrimeCare is vicariously liable for the actions and omissions of its employees committed within the scope of their employment.

## COUNT VII – PRIMA FACIE NEGLIGENCE
*Former Cabinet Secretary Sandy, Former Commissioner Jividen, Former SRJ Superintendent Francis, Correctional Officer Defendants, PrimeCare, PrimeCare Employee Defendants, John/Jane Doe Correctional Officers, and John/Jane Doe PrimeCare Employees*

223. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

224. As set forth hereinabove, Defendants violated W. Va. CSR § 95-1-10 et seq., and all other statutes intended for the safety and care of inmates who are in the custody of the State.

225. Because Defendants' violation of W. Va. CSR § 95-1-10 et seq., and all other statutes intended for the safety and care of inmates who are in the custody of the State

proximately caused Plaintiffs' injuries, Defendants are liable under a theory of prima facie negligence.

226.    As a direct and proximate result of Defendants' negligent conduct, Ricky Wriston suffered physical harm, physical pain and discomfort, and death.

227.    The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the duties owed to Ricky Wriston, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

228.    PrimeCare is vicariously liable for the negligent acts and omissions of its employees committed within the scope of their employment.

## COUNT VIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS/TORT OF OUTRAGE
*Former Cabinet Secretary Sandy, Former Commissioner Jividen, Former SRJ Superintendent Francis, Correctional Officer Defendants, PrimeCare, PrimeCare Employee Defendants, John/Jane Doe Correctional Officers, and John/Jane Doe PrimeCare Employees*

229.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

230.    Defendants' actions toward Ricky Wriston, as described herein, were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

231.    Defendants acted with intent to inflict emotional distress or acted recklessly when it was certain or substantially certain that emotional distress would result from their outrageous conduct.

232.    Defendants' heinous actions caused Ricky Wriston to suffer severe emotional distress.

233. The emotional distress was so severe, no reasonable person could be expected to endure it.

234. As a direct and proximate result of Defendants' reckless, intolerable, and outrageous conduct, Ricky Wriston suffered severe emotionally distress, and will seek compensatory damages for same.

235. The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Ricky Wriston, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

236. PrimeCare is vicariously liable for the actions and omissions of its employees committed within the scope of their employment.

### COUNT IX – COMMON LAW CIVIL CONSPIRACY
*Former Cabinet Secretary Sandy, Former Commissioner Jividen, Former SRJ Superintendent Francis, Correctional Officer Defendants, PrimeCare, PrimeCare Employee Defendants, John/Jane Doe Correctional Officers, and John/Jane Doe PrimeCare Employees*

237. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

238. As set forth herein, Defendants acted jointly and in concert to:

    a.  Negligently injure Ricky Wriston;

    b.  Injure Ricky Wriston in a grossly negligent manner;

    c.  Intentionally inflict emotional distress on Ricky Wriston; and

    d.  Negligently violate various statutes giving rise to prima facie liability.

239. As set forth herein, Defendants had a meeting of the minds to accomplish the tortious actions and injuries described herein.

240. As set forth herein, Defendants committed overt acts to accomplish the tortious actions and injuries described herein.

241.    As a direct and proximate result of Defendants' tortious conduct, Ricky Wriston suffered severe bodily injury, conscious pain and suffering, and an untimely death.  Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia survival and wrongful death statutes, W. Va. Code §§ 55-7-5 and 55-7-6.

242.    The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Ricky Wriston, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

243.    PrimeCare is vicariously liable for the actions and omissions of its employees committed within the scope of their employment.

### COUNT X – NEGLIGENT HIRING
*PrimeCare and WVDCR*

244.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

245.    At all times relevant hereto, PrimeCare and the WVDCR owed inmates at SRJ, including Ricky Wriston, a duty to not hire employees and place them in position of power and authority where they can cause serious harm or injuries to others.

246.    Upon information and belief, PrimeCare and the WVDCR did not conduct a reasonable investigation into the background of their Employee Defendants and did not adequately assess the possible risk of serious harm or injury to third-parties that could result from the conduct of their Employee Defendants if they were employed at SRJ.

247.    Upon information and belief, PrimeCare and the WVDCR's Employee Defendants had a history of prior grossly negligent acts and misconduct, including but not limited to, unjustified violence towards inmates; medical neglect; cruel and unusual punishment and the

- 34 -

unnecessary and wanton infliction of pain; and deliberate indifferent to, and willfully ignoring, the health, safety, and serious medical needs of inmates.

248.    Upon information and belief, had PrimeCare and the WVDCR conducted a reasonable investigation into the background of their Employee Defendants, they would have discovered that their Employee Defendants had a history of grossly negligent acts and misconduct.

249.    Upon information and belief, had PrimeCare and the WVDCR conducted a reasonable investigation into the background of their Employee Defendants, their grossly negligent acts described herein could have been prevented.

250.    The WVDCR violated clearly established rights and/or laws with respect to the hiring of its Employee Defendants, evidencing a deliberate indifference to Ricky Wriston's rights.

251.    As a direct and proximate result of PrimeCare and the WVDCR's grossly negligent conduct, Ricky Wriston suffered severe bodily injury, conscious pain and suffering, and an untimely death.  Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia survival and wrongful death statutes, W. Va. Code §§ 55-7-5 and 55-7-6.

252.    The actions of PrimeCare and the WVDCR were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Ricky Wriston.

253.    PrimeCare and the WVDCR's reprehensible, willful and wanton, malicious conduct and blatant disregard for the rights owed to Ricky Wriston justify an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

### COUNT XI – NEGLIGENT SUPERVISION AND TRAINING
### *PrimeCare and WVDCR*

254.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

255. At all times relevant hereto, PrimeCare and the WVDCR owed inmates at SRJ, including Ricky Wriston, a duty of care.

256. PrimeCare and the WVDCR owed inmates at SRJ, including Ricky Wriston, a duty to supervise and train their employees, especially those in positions of power and authority, to prevent them from acting in a grossly negligently manner and causing serious harm or injuries to others properly and adequately.

257. Upon information and belief, PrimeCare and the WVDCR's Employee Defendants were not properly or adequately supervised at SRJ.

258. Upon information and belief, PrimeCare and the WVDCR's Employee Defendants were not properly or adequately trained at SRJ.

259. Upon information and belief, PrimeCare and the WVDCR's grossly negligent supervision and training of their Employee Defendants allowed them to freely commit the grossly negligent and reckless acts described herein.

260. Upon information and belief, had PrimeCare and the WVDCR properly and adequately supervised and trained their Employee Defendants, their grossly negligent and reckless acts described herein could have been prevented.

261. The WVDCR violated clearly established rights and/or laws with respect to the supervision and training of its Employee Defendants, *inter alia*, W. Va. Code § 15A-3-4(a)(4), W. Va. Code § 15A-3-5, and WVDCR Regulations.

262. As a direct and proximate result of PrimeCare and the WVDCR's grossly negligent and reckless conduct, Ricky Wriston suffered severe bodily injury, conscious pain and suffering, and an untimely death. Plaintiff will seek to recover all damages permitted under the law,

including but not limited to, all damages recoverable under the West Virginia wrongful death statute, W. Va. Code §§ 55-7-6.

263.    The actions of PrimeCare and the WVDCR were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Ricky Wriston, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

**COUNT XII – NEGLIGENT RETENTION**
***PrimeCare and WVDCR***

264.    Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

265.    At all times relevant hereto, PrimeCare and the WVDCR owed inmates at SRJ, including Ricky Wriston, a duty of care.

266.    PrimeCare and the WVDCR owed inmates at SRJ, including Ricky Wriston, a duty to not negligently retain unfit employees, especially those in position of power and authority, who have engaged in grossly negligent, reckless, or otherwise wrongful conduct.

267.    Upon information and belief, PrimeCare and the WVDCR's Employee Defendants had a history of prior grossly negligent, reckless acts and misconduct, including but not limited to, unjustified violence towards inmates; medical neglect; cruel and unusual punishment and the unnecessary and wanton infliction of pain; and deliberate indifferent to, and willfully ignoring, the health, safety, and serious medical needs of inmates.

268.    Despite these aforementioned grossly negligent and reckless acts, as described herein, PrimeCare and the WVDCR's Employee Defendants were retained.

269.    Upon information and belief, PrimeCare and the WVDCR knew or should have known that their Employee Defendants were unfit, but retained them anyway.

270.    Upon information and belief, PrimeCare and the WVDCR could have reasonably foreseen the possible risk of harm or injury to others that could result from the conduct of their unfit Employee Defendants.

271.    Upon information and belief, had PrimeCare and the WVDCR not negligently retained their Employee Defendants, their grossly negligent and reckless acts described herein could have been prevented.

272.    The WVDCR violated clearly established rights and/or laws with respect to the retention of its Employee Defendants, *inter alia*, W. Va. Code § 15A-3-5 and WVDCR Regulations.

273.    As a direct and proximate result of PrimeCare and the WVDCR's grossly negligent and reckless conduct, Ricky Wriston suffered severe bodily injury, conscious pain and suffering, and an untimely death.  Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia survival and wrongful death statutes, W. Va. Code §§ 55-7-5 and 55-7-6.

274.    The actions of PrimeCare and the WVDCR were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Ricky Wriston, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## COUNT XIII – SPOLIATION OF EVIDENCE
*Former Cabinet Secretary Sandy, Former Commissioner Jividen, Former SRJ Superintendent Francis, Correctional Officer Defendants, John/Jane Doe Correctional Officers*

275.    Plaintiffs hereby incorporate by reference all preceding paragraphs as though fully set forth herein.

276.     Prior to the initiation of this lawsuit, only nine days after Mr. Wriston's death, beginning on March 23, 2022, Defendants Jividen, and the WVDOCR were put on notice to preserve all evidence pertaining to Mr. Wriston. See, Exhibit 1.

277.     These letters requested that evidence be preserved, including but not limited to, all documents, intake records, inmate requests, incident reports, employee personnel files, cell assignments, notes, daily logs, handwritten notes, witness statements, audio recordings, video recordings, and photographs pertaining to or depicting inmate Ricky Wriston, who was booked at the Southern Regional Jail on March 13, 2022.

278.     Defendants had a duty to preserve evidence.

279.     On October 2, 2023, these Defendants were subject to an evidentiary hearing regarding the destruction of evidence in *Rose, et al v. Jividen, et al.*, Civil Action No: 5:22-cv-405, namely, the purging of email accounts of not only Defendants, but other former SRJ employees, subsequent to receiving the Plaintiff's evidence preservation letters in March 2022. See Relevant Portions of the Transcript as Exhibit 2.

280.     Defendants Jividen and Francis, as well as counsel for WVDHS Philip Sword, each testified that they neither individually nor collectively did anything to preserve email accounts and made no effort to ensure that the accounts were being preserved in anticipation of litigation. See, Ex. 2. [Jividen 110: 3-23; Francis 130: 2-7; Sword 76].

281.      The West Virginia Office of Technology was never contacted by Defendants to preserve email accounts and other electronically stored evidence.  Now there is no way to recover critical evidence in this case.

282.     Chief Information Security Officer of the West Virginia Office of Technology, Danielle Cox, testified that email accounts could have been preserved had the WVDOCR/WVDHS

sent in a request, and could have been accomplished in a manner as simple as clicking a button. However, the WVDOCR/WVDHS made no effort to communicate with the Office of Technology and never tendered the information for accounts to be preserved. See Ex. 2 [Cox 149-150: 20-25, 14; 151: 2-11].

283.    Emails of Defendants Jividen and Francis, and any former SRJ employee no longer exist.

284.    Upon information and belief, Defendants destroyed audio and video recordings subsequent to anticipated litigation, those of which cannot be recovered.

285.    Upon information and belief, Defendants failed to preserve or destroyed certain Defendants and former SRJ employees' state-issued cell phones subsequent to anticipated litigation.

286.    Upon information and belief, Defendants destroyed evidence subsequent to receiving Plaintiff's preservation letters and even subsequent to the initial filing of the Complaint in this action.

287.    Defendants destroyed evidence willfully with the intent to defeat Plaintiff's ability to prevail in the pending civil action.

288.    The conduct of Defendants, as agents and representatives of WVDOCR and WVDHS, evidences a knowing and intentional breach of their duty to preserve relevant evidence, resulting in prejudice to the Plaintiffs.

289.    Plaintiffs have suffered prejudice and irreparable harm as a result of Defendants' misconduct in the spoliation and destruction of material evidence.

290.    In light of Defendants' conduct, the Honorable Magistrate Judge Omar Aboulhosn found sanctions warranted and recommended default judgment as to the WVDCR Defendants in the *Rose* case. *See* Order and Proposed Findings and Recommendation as <u>Exhibit 2.</u>

**WHEREFORE**, Plaintiff, individually and on behalf of the Estate of Richard Jason Wriston, requests that the Court:

a) Declare under FED. R. CIV. P. 57 that Defendants' actions and/or inactions, as described hereinabove, violate the Eighth and Fourteenth Amendments to the United States Constitution;

b) Award all compensatory damages allowed by law;

c) Award punitive damages, where applicable;

d) Award attorney's fees and costs incurred during the course of this litigation, pursuant to 42 U.S.C. § 1983;

e) Grant any and all relief Plaintiff may be entitled to in law or equity; and

f) Any further relief this Honorable Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

**RICHARD JAY WRISTON, on behalf of the ESTATE OF RICHARD JASON WRISTON**

**By Counsel**

*/s/ Stephen P. New*
Stephen P. New (WVSB No. 7756)
Emilee B. Wooldridge (WVSB No. 14310)
Stephen New & Associates
430 Harper Park Drive
Beckley, West Virginia 25801
Ph: (304) 250-6017
Fax: (304) 250-6012
steve@newlawoffice.com
emilee@newlawoffice.com

Paul Roop (WVSB No. 5406)
Roop Law Office, L.C.
115 Morning Star Lane
Beckley, West Virginia 25801
Ph: (304) 255-7667
paulroop@rooplawoffice.com

Mark R. Staun (WVSB No. 5728)
HARTLEY LAW GROUP, PLLC
United Center
500 Virginia Street, East – Suite 830
Charleston, West Virginia 25301
Phone: (304) 353-9797